## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Certain Underwriters at Lloyds London   :
Each severally subscribing to insurance   :
policies each for his own part and   :
not one for the other   :
numbered AE2141B and VS5057L   :
33 St. Mary Axe.   :
London EC3 8LL   :
ENGLAND   :
   :
and   :
   :
Allianz Cornhill Insurance, PLC, f/k/a   :
Cornhill Insurance, PLC   :
c/o Pro Insurance Solutions, Ltd.   :
One Great Tower Street   :
London EC3R 5AH   :
ENGLAND   :   **Civil Action No. _____**
   :
and   :
   :
Aviation & General Insurance   :
Company, Ltd.   :
c/o Ruxley Ventures Ltd.   :
2nd Floor, 6 Bevis Marks   :
London EC3A 7HL   :
ENGLAND   :
   :
and   :
   :
English & American Insurance   :
c/o Pro Insurance Solutions, Ltd.   :
One Great Tower Street   :
London EC3R 5AH   :
ENGLAND   :
   :
and   :
   :
Markel Insurance Company Ltd.,   :
f/k/a Terra Nova Insurance Company Ltd.   :
The Markel Building   :
49 Leadenhall St London EC3A 2EA   :
ENGLAND   :
   :

and                                               :
                                                  :
Minster Insurance Company Ltd.                    :
Groupama House                                    :
24-26 Minories London EC3N 1DE                    :
ENGLAND                                           :
                                                  :
and                                               :
                                                  :
MMO/New York Marine and General                  :
919 Third Avenue                                  :
10th Floor                                        :
New York, NY                                      :
                                                  :
and                                               :
                                                  :
Nippon Insurance Company of                       :
Europe Ltd.                                       :
c/o Pro Insurance Solutions, Ltd.                 :
One Great Tower Street London EC3R 5AH :
ENGLAND                                           :
                                                  :
and                                               :
                                                  :
Riverstone Insurance (UK) Ltd., successor         :
in interest to Sphere Drake Insurance Ltd.        :
Park Gate                                         :
161-163 Preston Road                              :
Brighton BN1 6AU                                  :
ENGLAND                                           :
                                                  :
and                                               :
                                                  :
Sovereign Marine & General Insurance             :
Company Ltd., c/o Pro Insurance                   :
Solutions, Ltd.                                   :
One Great Tower Street                            :
London EC3R 5AH                                   :
ENGLAND                                           :
                                                  :
and                                               :
                                                  :
SR International Business Insurance               :
Company Ltd., f/k/a Switzerland                   :
Insurance Company (UK) Ltd.                       :
c/o Pro Insurance Solutions, Ltd.                 :

One Great Tower Street                        :
London EC3R 5AH                               :
ENGLAND                                       :
                                              :
and                                           :
                                              :
Tower Insurance Ltd.                          :
c/o Pro Insurance Solutions, Ltd.            :
One Great Tower Street                        :
London EC3R 5AH                               :
ENGLAND                                       :
                                              :
and                                           :
                                              :
La Reunion Aerienne                           :
50 Rue Ampere                                 :
75017 Paris                                   :
FRANCE                                        :
                                              :
                            Plaintiffs,       :
                                              :
v.                                            :
                                              :
Great Socialist People's Libyan              :
    Arab Jamahiriya a/k/a LIBYA              :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Libyan Internal Security a/k/a               :
al-'Amn al-Dhakhili                           :
Bab-al-Azizyeh                                :
Assur Road                                    :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Libyan External Security a/k/a               :
al-'Amn al-Khariji                            :
Bab-al-Azizyeh                                :
Assur Road                                    :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Mu'ammar al-Qadhafi                          :

Supreme Leader of the Great Socialist          :
People's Libyan Arab Jamahiriya               :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Major Abdallah al-Sanusi                      :
Chief, Libyan Internal Security               :
Bab-al-Azizyeh                                :
Assur Road                                    :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Ibrahaim al-Bishari                           :
Chief, Libyan External Security               :
Bab-al-Azizyeh                                :
Assur Road                                    :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
SYRIAN ARAB REPUBLIC                          :
Damascus, SYRIA                               :
                                              :
and                                           :
                                              :
Syrian Air Force Intelligence                 :
Kafar Susa Roundabout                         :
Damascus, SYRIA                               :
                                              :
and                                           :
                                              :
General Muhammed Al Khuli                     :
Chief, Syrian Air Force Intelligence          :
Kafar Susa Roundabout                         :
Damascus, SYRIA                               :
                              Defendants       :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

4

## COMPLAINT

Plaintiffs bring this action as a related action pursuant to the provisions of the newly enacted Defense Authorization Act for Fiscal Year 2008, Section 1083(c), Pub. L. No. 110-181, §1083, 122 Stat. 3, 338-344 (2008) and 28 U.S.C. § 1602, *et seq.*

Plaintiffs, Certain Underwriters at Lloyds London each severally subscribing to insurance policies each for his own part and not one for the other numbered AE2141B and VS5057L; Allianz Cornhill Insurance, PLC, f/k/a Cornhill Insurance, PLC, c/o Pro Insurance Solutions, Ltd.; Aviation and General Insurance Company, Ltd., c/o Ruxley Ventures Ltd.; English & American Insurance Company, Ltd., c/o Pro Insurance Solutions, Ltd.; Markel Insurance Company, Ltd., f/k/a Terra Nova Insurance Company, Ltd.; Minster Insurance Company Ltd.; MMO/New York Marine and General; Nippon Insurance Company of Europe Ltd., c/o Pro Insurance Solutions, Ltd.; Riverstone Insurance (UK) Ltd., as successor in interest to Sphere Drake Insurance Ltd.; Sovereign Marine & General Insurance Company Ltd., c/o Pro Insurance Solutions, Ltd.; SR International Business Insurance Company Ltd., f/k/a Switzerland Insurance Company (UK) Ltd., c/o Pro Insurance Solutions, Ltd.;  Tower Insurance Ltd., c/o Pro Insurance Solutions, Ltd.; and La Reunion Aerienne, which underwriting companies are hereinafter referred to solely for the sake of convenience and without waiver of the several nature for their subscriptions as "Underwriters and Companies", "Plaintiff Underwriters and Companies" or "Plaintiffs", bring this action pursuant to the provisions of 28 U.S.C. § 1605A, et seq., the Foreign Sovereign Immunities Act ("FSIA") and 28 U.S.C. § 1350, the Alien Torts Claims Act ("ATCA") seeking compensatory and punitive damages for conversion and trespass of Plaintiffs' property, and seeking compensatory and punitive

damages for facilitating acts of terrorism, violations of the laws of nations, including air piracy, as hereinafter set forth.

This action arises out of the November 23, 1985 terrorist hijacking of Egypt Air Flight 648, which caused its destruction beyond repair, carried out as described below acting under the instruction and/or control of the Defendants and/or utilizing the funding provided by the governments of Libya and Syria, as state-sponsors of terrorism and others who support terrorism, and to which actions the Defendants rendered material support. Egypt Air Flight 648 was a Boeing 737 airplane covered by insurance policies numbered AE2141B and VS5057L, the coverage of which was provided by Certain Underwriters at Lloyds London, including the named Plaintiff's and each of them to the extent of their respective coverage obligations and losses as sustained.

Plaintiffs state in support of their Complaint and allege as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1605A, 1330(a), 1331, and 1350.

2.    Defendants Great Socialist People's Libyan Arab Jamahiriya (hereinafter "Libya"), al 'Amn-al Dhakhili (hereinafter "Libyan Internal Security Agency" or "LISO"), al-'Amn al Khariji (hereinafter "Libyan External Security Agency" or "LESO"), Syrian Arab Republic (hereinafter "Syria"), and Syrian Air Force Intelligence are subject to suit in the courts of the United States as sponsors of the Abu Nidal Organization's ("ANO")activities and as direct participants in the acts of terrorism as described herein pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A, and related statutes.

6

3.    Defendants waived their sovereign immunity under 28 U.S.C. § 1605A when they aided and abetted, conspired with and materially supported the terrorist group that hijacked Egypt Air Flight 648. The provision of material support by Defendants meets the requirements for subject matter jurisdiction established by 28 U.S.C. § 1605A

4.    28 U.S.C. § 1605A(a)(1) provides that a foreign state shall not be immune from the jurisdiction of the courts of the United States in a case where money damages are sought against the foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee or agent of such foreign state.

5.    28 U.S.C. § 1605A(a)(2) further provides that a court shall hear a claim if, in an action that is re-filed under this section by reason of Section 1083(c)(3) of the National Defense Authorization Act for Fiscal Year, as is the case in this matter, the foreign state was designated as a state sponsor of terrorism when the related action under section 1605(a)(7) was filed. 28 U.S.C. 1605A(a)(2)(A)(i)(II).

6.    Moreover, 28 U.S.C. § 1605A(a)(2)(A)(ii) provides that the court shall hear a claim under this section if the claimant or victim was at the time the terrorist attack occurred a national of the United States.

7.    28 U.S.C. § 1605A(c) provides that a private right of action may be brought against foreign states that are or were state sponsors of terrorism and they will be liable to the victim's legal representatives.

8.    Finally, 28 U.S.C. § 1605A(d) provides that after an action has been brought under 28 U.S.C. § 1605A(c), then other actions may be brought for the reasonable

foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life and property insurance policies, by reason of the same acts on which an action under 28 U.S.C. § 1605A(c) is based.

9.    As there has been a claim brought by the United States national victims of the terrorist incidents described herein for the personal injuries and death caused by these defendants which was originally filed pursuant to 28 U.S.C. § 1605(a)(7) (*Baker v. Socialist Peoples' Libyan Arab Jamahirya*, Civ. No. 03-cv-0749(GK)(D.D.C.)); and as said action is pending, and as the Plaintiffs in the within action are now entitled as the property insurers of the aircraft that was sabotaged by these defendants participation and material support of the terrorist incident described herein, these Plaintiffs may now bring this private right of action for this reasonably foreseeable property loss.

10.    Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari, and Major Abdallah al-Sanusi are subject to suit in the courts of the United States pursuant to the FSIA and the ATCA.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

**THE PARTIES**

12.    Plaintiff Underwriters and Companies provided liability insurance that covered the hull of Egypt Air Flight 648 pursuant to the aforementioned policies. Plaintiffs can sue and be sued in this Court.

13.    Defendant Libya had been designated as a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)) and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) from December 29, 1979 until 2006, and was so designated during the time of the EgyptAir Flight 648

8

terrorist attack as required by 28 U.S.C. § 1605A(a)(2)(A)(i)(I) and (II). Libya, at all times pertinent to this action, provided material support and resources to ANO. ANO, at all times pertinent to this action, has operated, among other things, in Libya, Iraq, Lebanon and Syria and carried out both military like operations and a campaign of terrorism. This terrorist campaign has included, but not limited to, attacks in 20 countries, killing or injuring almost 900 persons. Targets include the United States, the United Kingdom, France, Israel, moderate Palestinians, the PLO, Austria, Italy and various other countries. Libya, through its actions is and/or has been a sponsor of Abu Nidal, within the meaning of 28 U.S.C. § 1605A and Public Law 110-181, Section 1083, by providing it with funding, direction, aid, support and training for its terrorist activities.

14. Defendant Syria is a foreign state that has been designated and remains designated as a state sponsor of terrorism pursuant to § 60 of the Export Administration Act of 1979 (50 U.S.C. App. § 24050) and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) since January 19, 1984 as required by 28 U.S.C. § 1605A(a)(2)(A)(i)(I) and (II). Syria at all times pertinent to this action, provided material support and resources to the ANO . ANO, at all times pertinent to this action operates, *inter alia*, in Libya, Iraq, Lebanon, and Syria and carried out both militant terrorist operations and a campaign of terrorism. This terrorist campaign has included, but is not limited to, attacks in 20 countries, killing or injuring almost 900 persons. Targets include persons in the United States, the United Kingdom, France, Israel, as well as moderate Palestinians, the PLO, Austria, Italy and various other countries. Syria, through its actions is and/or has been a sponsor of Abu Nidal Organization, within the meaning of 28

U.S.C. § 1605A, by providing it with funding, aid, support, direction and/or training for its terrorist activities.

15.    Defendant Libyan Internal Security is one of the Libyan intelligence services through which Libya sponsored Abu Nidal Organization which caused the terrorist acts described below.

16.    Defendant Libyan External Security is one of the Libyan intelligence services through which Libya sponsored Abu Nidal Organization which caused the terrorist acts described below.

17.    Defendant Mu'ammar al Qadhdhafi is the leader of Libya and performed acts within the scope of his office which caused the terrorist acts described below.

18.    Defendant Major 'Abdallah al-Sanusi was the head of the Libyan Internal Security Agency and performed acts within the scope of his office which caused the terrorist acts described below.

19.    Defendant Ibrahaim al-Bishari was the head of the Libyan External Security Agency and performed acts within the scope of his office, which acts caused the terrorist acts described below.

20.    Defendant Syrian Air Force Intelligence is the Syrian intelligence services through which Syria sponsored Abu Nidal Organization, which acts caused the terrorist acts described below.

21.    Defendant General Muhammed al-Khuli was the chief of the Syrian Air Force Intelligence and performed acts within the scope of his office, which acts caused the terrorist acts described below.

22.    Defendants Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari, and pursuant to 28 U.S.C. § 1605A(c) and (d) and state law are directly and/or vicariously responsible for the actions of the ANO terrorists and their co-defendants because they sponsored the Abu Nidal Organization.    Accordingly, said Defendants are jointly and severally liable to Plaintiffs.

**DEFENDANTS' SPONSORSHIP AND SUPPORT FOR
THE ABU NIDAL ORGANIZATION**

23.    The government of Libya and also separately the government of Syria sponsored and supported the Abu Nidal Organization, a/k/a Black September, the Fatah Revolutionary Council, the Arab Revolutionary Council, the Arab Revolutionary Brigades, the Revolutionary Organization of Socialist Muslims, (hereinafter "ANO") a known terrorist organization, headed by Sabri Al Bana, a/k/a Abu Nidal, prior to November 23, 1985, the date of the hijacking of Egypt Air Flight 648.

24.    The substantial material support to and sponsorship of the ANO by the government of Libya included, but was not limited to, assisting and/or providing the following:

  a.    weapons,

  b.    funds,

  c.    facilities,

  d.    airline tickets,

  e.    free and unobstructed entry into, safe haven in, and exit from Libya by members of ANO,

f.  terrorist training in Libyan camps,

g.  use of the privilege of Libya's "diplomatic pouch",

h.  use of Libya's diplomatic freight privileges,

i.  official documents of all kinds, and

j.  actual operational assistance in pre-positioning of people and supplies for the conduct of the hijacking of Flight 648.

25.    On two separate occasions shortly prior to the hijacking event, one or more of the hijackers met in Athens with a Libyan government official regarding the planned hijacking. In addition, without the material support provided and direct involvement of this Libyan official, this particular terrorist event would not have taken place.

26.    More specifically, in this particular instance the government of Libya supported this operation by, among other things:

a.  providing at least some of the ANO hijackers with Tunisian passports, which allowed the hijackers to travel and

b.  transporting to Athens by Libyan government representatives in its "diplomatic pouch" the weapons used by the ANO hijackers to pre-position the weapons in Athens for pick up at the Athens Airport by the ANO resident agent.

27.    The ANO resident agent then passed the weapons and other support material to the ANO "cut-out," who then passed the weapons and materials to an ANO leader, who then provided the weapons and support material to the ANO hijackers.

12

28.    Once the hijackers departed on the Egypt Air flight, the ANO cut-out and the ANO leader, both of whom had been brought to Greece for their particular task, left Greece.

29.    The sponsorship by the government of Syria included, among other things, the providing of training in Syrian sponsored ANO terrorist training camps, military and general intelligence, safe haven and free passage in and through Syrian controlled territory.

30.    Syria provided general material support to the ANO by providing ANO with funds, travel documents, training support and protection at several facilities, including those located in the Syrian controlled Bekaa Valley located in Lebanon ("Bekaa Valley"). Syrian military and government intelligence agents were present around the ANO terrorist training camp maintained in the Bekaa Valley.

31.    The Defense Intelligence Agency of the United States Department of Defense, and other intelligence agencies of the United States government, determined that the hijacking of the Egypt Air Flight 648 on November 23, 1985 was conducted by members of the terrorist organization known as the ANO, and that the organization and act were sponsored by (a) the government of Libya, which provided general and specific material support for ANO, thereby enabling ANO to commit this hijacking; and that the ANO was also sponsored by (b) the government of Syria, which provided general material support for ANO and its terrorist members.

32.    The providing of material support for the ANO, a known terrorist organization, by the government of Libya and the government of Syria, acting directly and by and through their individual governmental representatives as named in the

Complaint, and by other representatives of the government, constitute violations of numerous applicable United States laws, thereby rendering the government of Libya, and the government of Syria, and their individual governmental representatives named as defendants herein, jointly and severally liable for illegal acts and deeds alleged herein.

## FACTUAL ALLEGATIONS

33.     On or about November 13, 1985, an ANO operative, Omar Rezaq ("Rezaq"), traveled from Beirut to Athens, Greece, for the express purpose of participating in an ANO mission to hijack an airplane.

34.     On November 23, 1985, three (3) ANO operatives, including Rezaq, boarded Egypt Air Flight 648, a Boeing 737 airliner, ("Flight 648" or "Insured Property"), having used illegal passports provided to them by Libya for the purpose of accomplishing the mission of hijacking the plane.

35.     Shortly thereafter, Flight 648, took off from Athens, Greece, and headed in a southeasterly direction toward Cairo, Egypt, its planned destination.

36.     Twenty-two minutes into the flight, terrorists from the Abu Nidal organization, hijacked the plane.

37.     After a mid-flight shootout between an Egyptian Sky Marshall and one of the hijackers, which resulted in the death of a hijacker, the wounding of the Sky Marshall, and two stewardesses, as well as the piercing of the fuselage, Flight 648 was diverted to Malta.

38.     At first, the tower at Malta's International Airport refused to let Flight 648 land, but authorities relented after Captain Galal told them that the plane was in imminent danger of crashing into the sea because he was nearly out of fuel.

39.    Even so, the runway lights were still off and Galal, with a gun barrell at his head, had to rely on his plane's landing light to pierce the darkness as he landed at Malta's International Airport.

40.    The tower ordered Flight 648 to taxi to a remote parking area; four police buses then blocked both ends of the runway.

41.    The terrorists demanded that the airport authorities of Malta refuel the plane.

42.    The airport authorities of Malta refused to comply with the terrorists' demands.

43.    At that time, the terrorists threatened to shoot one passenger every fifteen minutes unless the Maltese agreed to refuel the plane.

44.    Meanwhile, in a response to an appeal from the pilot, the terrorists agreed to release eleven women—seven Filipinos and four Egyptians.

45.    Thereafter, the terrorists identified two Israeli women and shot them in the head.  Thinking that the women were dead or mortally wounded, the terrorists threw them out of the plane and onto the tarmac.

46.    Next, the terrorists brought to the front of the plane three American passengers, shot each in the head one by one, and threw each of them out of the plane onto the tarmac.

47.    Twenty-four hours after the hijacking began, while the aircraft was still on the ground in Malta, Egyptian Commandos stormed the plane in an attempt to rescue the passengers.

48.    The Egyptian Commandos entered the plane by attacking the passenger

doors and the luggage compartment doors with explosives and causing damage to the

aircraft.

49.    These explosions caused the internal plastic of the plane to catch fire,

causing widespread suffocation, deaths and resultant damage to the aircraft.

50.    When the hijackers realized that they were being attacked, they lobbed hand

grenades into the passenger area, killing and injuring passengers and igniting a fire inside

the aircraft, causing further damage to the aircraft, all of which was a direct and

forseeable consequence of the terrorist hijacking and resulting rescue attempt.

51.    As a result of (a) the mid-flight shootout with the Egyptian Sky Marshall,

(b) fire from the use of explosives by the Egyptian Commandos, and (c) the use of hand

grenades by the terrorists, the airplane was damaged beyond repair and ceased to be

suitable for any purpose whatsoever, all to the damage of the Plaintiffs.

52.    The United States Department of State, Office of the Historian, Bureau of

Public Affairs, in its report of Significant Terrorist Incidents, 1961- 2001, lists the

Egyptian Airliner Hijacking of November 23, 1985 as being a terrorist act that was

conducted by the Abu Nidal Group.

53.    Background Information on Foreign Terrorist Organizations, released by the

Office of Counterterrorism, of the United States Department of State, indicates that the

Abu Nidal Organization ("ANO") a/k/a Black September, the Fatah Revolutionary

Council, the Arab Revolutionary Council, the Arab Revolutionary Brigades, the

Revolutionary Organization of Socialist Muslims has received considerable support,

including safe haven, training, logistic assistance, and/or financial aid, *inter alia,* from the States of Libya, and Syria, each being a Defendant herein.

### COUNT I - 28 U.S.C. §1605A(d)
(All Plaintiffs)

54.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

55.     On November 23, 1985, members of the ANO willfully, violently and forcefully committed terrorist acts on board Egypt Air Flight 648 with the express purpose of inflicting personal injury, severe pain and suffering, death, and severe emotional injuries.

56.     Upon hijacking Egypt Air Flight 648, it was reasonably foreseeable that the hull of the Egypt Air jetliner would be destroyed during the hijacking event.

57.     The Defendants' actions in supporting and directing the hijacking of Egypt Air Flight 648 interfered with Plaintiffs' right as its rightful owner to control the Insured Property to such extent that the requirement to pay the full value of the property is just, because the Defendants' actions caused the hijacking, as well as the use of hand grenades and other explosives by both the ANO terrorists acting as the Defendants' agents and the Egyptian Commandoes who stormed the airplane in an attempt to rescue the passengers, causing the complete destruction of the Insured Property beyond repair, all to the damage of the Plaintiffs.

58.     The willful, wrongful and intentional acts of Abu Nidal terrorists were sponsored and directed by Libya, and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, and Libyan Internal Security Agency.

59.    Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices which sponsored the ANO 's terrorist activities, including but, not limited to the Egypt Air Highjacking.

60.    As a direct and proximate result of the willful, wrongful and intentional acts of the ANO members, whose acts were sponsored and directed by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari, the Egypt Air jetliner hull was destroyed, all to the damage of the Plaintiffs.

61.    28 U.S.C. § 1605A(d) provides that Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari, may be held liable for the reasonably foreseeable property losses, whether insured or uninsured, when an action has been committed under 28 U.S.C. § 1605A(c).  An action was brought against these Defendants under 28 U.S.C. § 1605A(c) by claimants in *Baker v. Socialist Peoples' Libyan Arab Jamahirya*, Civ. No. 03-cv-0749(GK)(D.D.C.). which is pending before this Court

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages for conversion and destruction of property in the amount of an excess of **FORTY MILLION DOLLARS ($40,000,000.00),** plus interest, cost and attorney's fees, and such other and further relief as the Court may deem appropriate under the circumstances.

18

## COUNT II – CONVERSION

62.    Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

63.    The November 23, 1985 hijacking of Egypt Air Flight 648 by the ANO terrorists, acting as agents of the Defendants, constituted a common law conversion of Plaintiffs' Insured Property, all to their damage.

64.    As insurers of Egypt Air Flight 648, the Plaintiffs compensated the original owner, Egypt Air, for the cost of the destroyed airplane.

65.    Accordingly, as insurers who fully compensated the insured for the loss of the airplane, the Plaintiffs are the rightful owners of the Insured Property for the purposes of common law conversion.

66.    Defendants wrongfully deprived Plaintiffs of their property interest in the Insured Property by their material support and direct involvement in the hijacking of Egypt Air Flight 648, which was carried out by ANO terrorists acting as the Defendants' agents, resulting in Egypt Air Flight 648's destruction beyond repair, all to the damage of Plaintiffs.

67.    By causing Egypt Air Flight 648's hijacking and destruction, the Defendants wrongfully exercised control and dominion over the Insured Property to the exclusion of its rightful owners, the Plaintiffs herein.

68.    The Defendants' actions in supporting and directing the hijacking of Egypt Air Flight 648 interfered with Plaintiffs' right as its rightful owner to control the Insured Property to such extent that the requirement to pay the full value of the property is just, because the Defendants' actions caused the hijacking, as well as the use of hand grenades

19

and other explosives by both the ANO terrorists acting as the Defendants' agents and the Egyptian Commandoes who stormed the airplane in an attempt to rescue the passengers, causing the destruction of the Insured Property beyond repair, all to the damage of the Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages for conversion and destruction of property in the amount of an excess of **FORTY MILLION DOLLARS ($40,000,000.00),** plus interest, cost and attorney's fees, and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT III – TRESPASS

69. Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein..

70. The November 23, 1985 hijacking of Egypt Air Flight 648 (the Boeing 737) constituted an intentional and unlawful trespass upon the personal property of Plaintiffs' insured, to which Plaintiffs' insured did not consent.

71. Defendants intentionally used and intermeddled with the property of Plaintiffs' insured when the ANO terrorists hijacked the airplane.

72. Defendants intentionally used and intermeddled with the property of Plaintiffs' insured when the hijackers pierced the fuselage of the airplane while engaged in a shootout with an Egyptian Sky Marshall.

73. Defendants intentionally used and intermeddled with the property of Plaintiffs' insured when the hijackers took control over the navigation of the airplane.

20

74.     Defendants intentionally used and intermeddled with the property of Plaintiffs' insured when the terrorists took full control over the passengers on the airplane, shot certain American and Israeli passengers, threatened to shoot one more passenger every fifteen minutes, and prevented all but the thirteen released passengers from exiting the aircraft.

75.     Defendants intentionally used and intermeddled with the property of Plaintiffs' insured when Defendants caused the Egyptian Commandos to use the explosives in an attempt to rescue the passengers, which caused the internal plastic of the plane to catch fire and burn the airplane beyond repair, all to the damage of the Plaintiffs.

76.     Plaintiffs' insured never authorized Defendants or their agents to use and intermeddle with their property, and at all times objected to such actions.

77.     The Plaintiffs' sustained substantial harm because their property, the airplane, was burned, damaged by explosives, pierced by bullets, and otherwise damaged beyond repair, all to the damage of the Plaintiffs.

78.     The damages to the airplane were the direct and proximate result of the trespass upon the Plaintiffs' property by agents of the Defendants. Defendants' actions of aiding, supporting, directing and/or facilitating the hijacking of the airplane, causing a mid-flight shootout with an Egyptian Sky Marshall, causing the Egyptian Commandoes to use explosives to enter the airplane, and the hijackers' use of hand grenades caused the destruction of the airplane beyond repair, all to the damage of the Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages for destruction of property resulting from trespass in the amount of an excess of **FORTY MILLION DOLLARS ($40,000,000.00)** plus

interest, costs and attorney's fees, for business interruption losses, and the expenses in the form of payments to passengers and third victims claims for death and injuries to passengers, punitive damages in an amount to be determined at trial, and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT IV – AIRCRAFT PIRACY

79.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

80.    At the time aircraft hijacking, aircraft piracy was recognized as a clear and definite norm of international law which was and is universally accepted by the civilized world and such conduct is so widely condemned that it has achieved the status of a universally recognized or *jus cogens* violation, and, therefore, is a violation of the law of nations such that the commission of air piracy by a party subjects it to liability to aliens in United States courts under the ATCA.  See 49 U.S.C. §§ 46501, 46502.

81.    General federal common law recognizes complicit liability for violations of the law of nations under theories of aiding and abetting, conspiracy, agency, vicarious liability and joint venture.

82.    Plaintiffs were injured as a result of Defendants' actions in contravention of this universally international accepted norm.

83.    Plaintiffs assert a cause of action of air piracy against General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari, and Major Abdallah al-Sanusi in their individual capacities under applicable federal common law, state common law, federal statutory law, foreign law, and foreign statutory law.

WHEREFORE, Plaintiffs demand judgment against General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari, and Major Abdallah al-Sanusi in their individual capacities, jointly and severally, for compensatory damages for destruction of property resulting from trespass and/or aircraft piracy in the amount of an excess of **FORTY MILLION DOLLARS ($40,000,000.00)**, plus interest, cost and attorney's fees, and such other and further relief as the Court may deem appropriate under the circumstances, for business interruption losses, and the expenses in the form of payments to passengers and third victims claims for death and injuries to passengers, in an amount to be determined at trial, pre- and post- judgment interest, costs of this action, attorney's fees and such other and further relief as the Court may deem appropriate under the circumstances.

## ADDITIONAL RELIEF REQUESTED

Plaintiffs request leave of Court to amend this Complaint, and for such further and other relief to which the Plaintiffs may appear entitled, as the interests of justice require

Dated: March 24, 2008

Respectfully Submitted,

HEIDEMAN NUDELMAN
& KALIK, P.C.
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-463-1818
Telefax:    202-463-2999

By _____

Richard D. Heideman (No. 377462)
Noel J. Nudelman (No. 449969)
Tracy Reichman Kalik (No. 462055)

23

Steven R. Perles (No. 326975)
Edward MacAllister (No. 494558)
PERLES LAW FIRM, PC
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax:    202-955-3806

E 08 -504
GK

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Certain Underwriters at Lloyds London, et al. | Great Socialist People's Libyan Arab Jamahiriya, et al. |

91999
99999

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard Heideman
Heideman Nudelman & Kalik, P.C.
1146 19th St., NW  5th Floor,
Washington, DC  20036
202-463-1818

Case: 1:08-cv-00504
Assigned To : Kessler, Gladys
Assign. Date : 3/24/2008
Description: General Civil

## II.  BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E.**  *General Civil (Other)*         **OR**         ○ **F.**  *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☒ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

⑨

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)** *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** ☐ **890 Other Statutory Actions (if Privacy Act)** *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** ☐ **720 Labor/Mgmt. Relations** ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** ☐ **740 Labor Railway Act** ☐ **790 Other Labor Litigation** ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** ☐ **443 Housing/Accommodations** ☐ **444 Welfare** ☐ **440 Other Civil Rights** ☐ **445 American w/Disabilities-Employment** ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** ☐ **120 Marine** ☐ **130 Miller Act** ☐ **140 Negotiable Instrument** ☐ **150 Recovery of Overpayment & Enforcement of Judgment** ☐ **153 Recovery of Overpayment of Veteran's Benefits** ☐ **160 Stockholder's Suits** ☐ **190 Other Contracts** ☐ **195 Contract Product Liability** ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Plaintiffs bring suit pursuant to 28 U.S.C. 1605A(c) and (d) for the property damage that occurred resulting from a terrorist incident

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** 40,000,000   Check YES only if demanded in complaint

**JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE 3/24/08     SIGNATURE OF ATTORNEY OF RECORD     *Richard A Heideman*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.     RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.