UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS LONDON, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREAT SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, *et al.*, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:06-cv-00731-GK |
| CERTAIN UNDERWRITERS AT LLOYDS LONDON, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREAT SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, *et al.*, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:08-cv-00504-GK |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahim Al-Bishari[1] (the "Libyan Defendants") respectfully inform this Court of the "Libyan Claims Resolution Act," S. 3370, 110th Cong. (passed by the Senate and House, July 31, 2008) (Exhibit A) (the "Act"),

---

[1] Undersigned counsel has entered their appearance on behalf of Defendant Ibrahim Al-Bishari in the matter *Certain Underwriters at Lloyds London v. Great Socialist People's Libyan Arab Jamahiriya*, Case No. 1:06-cv-00731 only. Pursuant to the parties' Joint Praecipe filed herein (Dckt. No. 71), undersigned counsel is not authorized to accept service on behalf of Mr. Al-Bishari in the matter *Certain Underwriters at Lloyds London v. Great Socialist People's Libyan Arab Jamahiriya*, Case No. 1:08-cv-00504 and does not file the instant notice on his behalf in that action.

which was signed into law by President Bush, *see* Press Release, White House Office of the Press Secretary, President Bush Signs S. 3370 Into Law (Aug. 4, 2008) (Exhibit B).

The Libyan Claims Resolution Act contemplates a "comprehensive settlement . . . pursuant to an international agreement between the United States and Libya as a part of the process of restoring normal relations between Libya and the United States." The Act at § 3. The Libyan State Defendants expect execution of the international agreement this week. Once that agreement is executed and the Secretary of State certifies receipt of payment, Libya will no longer be subject to jurisdiction under 28 U.S.C. §§ 1605A or 1605(a)(7). *Id.* at § 5(a)(1)(A). Eligible claimants will have the opportunity to seek compensation through a claims-settlement mechanism to be administered by the U.S. Government. *Id.* at §5(a)(2)(B)(ii).

The press releases of Secretary of State Rice (Aug. 1, 2008) (Exhibit C), Senator Lautenberg (July 31, 2008) (Exhibit D), and Senator Biden (July 31, 2008) (Exhibit E), all in support of the Act, are also attached for the Court's reference.

Dated: August 12, 2008

Respectfully submitted,

ECKERT SEAMENS CHERIN
& MELLOTT, LLC


/s/ Thomas J. Whalen
Thomas J. Whalen, Esq. (Bar No. 208512)
Mark A. Johnston, Esq. (Bar No. 455764)
1747 Pennsylvania Ave., N.W.,
Twelfth Floor
Washington, D.C. 20006
(202) 659-6600
twhalen@eckertseamans.com
mjohnston@eckertseamans.com

Wendy West Feinstein, Esq. (Pa ID No. 86698)
*Admitted Pro Hac Vice*
600 Grant Street
44th Floor
Pittsburgh, PA 15219
(412) 566-6000
wfeinstein@eckertseamans.com

# Exhibit A

# One Hundred Tenth Congress
# of the
# United States of America

**AT THE SECOND SESSION**

*Begun and held at the City of Washington on Thursday, the third day of January, two thousand and eight*

# An Act

To resolve pending claims against Libya by United States nationals, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Libyan Claims Resolution Act".

**SEC. 2. DEFINITIONS.**

In this Act—
  (1) the term "appropriate congressional committees" means the Committee on Foreign Relations and the Committee on the Judiciary of the Senate and the Committee on Foreign Affairs and the Committee on the Judiciary of the House of Representatives;
  (2) the term "claims agreement" means an international agreement between the United States and Libya, binding under international law, that provides for the settlement of terrorism-related claims of nationals of the United States against Libya through fair compensation;
  (3) the term "national of the United States" has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));
  (4) the term "Secretary" means the Secretary of State; and
  (5) the term "state sponsor of terrorism" means a country the government of which the Secretary has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism.

**SEC. 3. SENSE OF CONGRESS.**

Congress supports the President in his efforts to provide fair compensation to all nationals of the United States who have terrorism-related claims against Libya through a comprehensive settlement of claims by such nationals against Libya pursuant to an international agreement between the United States and Libya as a part of the process of restoring normal relations between Libya and the United States.

**SEC. 4. ENTITY TO ASSIST IN IMPLEMENTATION OF CLAIMS AGREEMENT.**

(a) DESIGNATION OF ENTITY.—
　(1) DESIGNATION.—The Secretary, by publication in the Federal Register, may, after consultation with the appropriate congressional committees, designate 1 or more entities to assist in providing compensation to nationals of the United States, pursuant to a claims agreement.
　(2) AUTHORITY OF THE SECRETARY.—The designation of an entity under paragraph (1) is within the sole discretion of the Secretary, and may not be delegated. The designation shall not be subject to judicial review.

(b) IMMUNITY.—
　(1) PROPERTY.—
　　(A) IN GENERAL.—Notwithstanding any other provision of law, if the Secretary designates any entity under subsection (a)(1), any property described in subparagraph (B) of this paragraph shall be immune from attachment or any other judicial process. Such immunity shall be in addition to any other applicable immunity.
　　(B) PROPERTY DESCRIBED.—The property described in this subparagraph is any property that—
　　　(i) relates to the claims agreement; and
　　　(ii) for the purpose of implementing the claims agreement, is—
　　　　(I) held by an entity designated by the Secretary under subsection (a)(1);
　　　　(II) transferred to the entity; or
　　　　(III) transferred from the entity.
　(2) OTHER ACTS.—An entity designated by the Secretary under subsection (a)(1), and any person acting through or on behalf of such entity, shall not be liable in any Federal or State court for any action taken to implement a claims agreement.

(c) NONAPPLICABILITY OF THE GOVERNMENT CORPORATION CONTROL ACT.—An entity designated by the Secretary under subsection (a)(1) shall not be subject to chapter 91 of title 31, United States Code (commonly known as the "Government Corporation Control Act").

**SEC. 5. RECEIPT OF ADEQUATE FUNDS; IMMUNITIES OF LIBYA.**

(a) IMMUNITY.—
　(1) IN GENERAL.—Notwithstanding any other provision of law, upon submission of a certification described in paragraph (2)—
　　(A) Libya, an agency or instrumentality of Libya, and the property of Libya or an agency or instrumentality of Libya, shall not be subject to the exceptions to immunity from jurisdiction, liens, attachment, and execution contained in section 1605A, 1605(a)(7), or 1610 (insofar as section 1610 relates to a judgment under such section 1605A or 1605(a)(7)) of title 28, United States Code;
　　(B) section 1605A(c) of title 28, United States Code, section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008 (Public Law 110–181; 122 Stat. 342;

28 U.S.C. 1605A note), section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (28 U.S.C. 1605 note), and any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Libya, or any of its agencies, instrumentalities, officials, employees, or agents in any action in a Federal or State court; and

(C) any attachment, decree, lien, execution, garnishment, or other judicial process brought against property of Libya, or property of any agency, instrumentality, official, employee, or agent of Libya, in connection with an action that would be precluded by subparagraph (A) or (B) shall be void.

(2) CERTIFICATION.—A certification described in this paragraph is a certification—

(A) by the Secretary to the appropriate congressional committees; and

(B) stating that the United States Government has received funds pursuant to the claims agreement that are sufficient to ensure—

(i) payment of the settlements referred to in section 654(b) of division J of the Consolidated Appropriations Act, 2008 (Public Law 110–161; 121 Stat. 2342); and

(ii) fair compensation of claims of nationals of the United States for wrongful death or physical injury in cases pending on the date of enactment of this Act against Libya arising under section 1605A of title 28, United States Code (including any action brought under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (28 U.S.C. 1605 note), that has been given effect as if the action had originally been filed under 1605A(c) of title 28, United States Code, pursuant to section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008 (Public Law 110–181; 122 Stat. 342; 28 U.S.C. 1605A note)).

(b) TEMPORAL SCOPE.—Subsection (a) shall apply only with respect to any conduct or event occurring before June 30, 2006, regardless of whether, or the extent to which, application of that subsection affects any action filed before, on, or after that date.

(c) AUTHORITY OF THE SECRETARY.—The certification by the Secretary referred to in subsection (a)(2) may not be delegated, and shall not be subject to judicial review.

*Speaker of the House of Representatives.*

*Vice President of the United States and President of the Senate.*

# Exhibit B

**THE WHITE HOUSE**
PRESIDENT GEORGE W. BUSH

Home > News & Policies

For Immediate Release
Office of the Press Secretary
August 4, 2008

## President Bush Signs S. 3370 Into Law

On Monday, August 4, 2008, the President signed into law:

S. 3370, the "Libyan Claims Resolution Act," which provides authority to resolve pending claims against Libya by United States nationals.

# # #

# Exhibit C

Case 1:08-cv-00504-GK   Document 19-4   Filed 08/12/2008   Page 1 of 2

Case 1:08-cv-00504-GK    Document 19-4    Filed 08/12/2008    Page 2 of 2



## Libya: Passage of Legislation on Compensation for Claims

**Secretary Condoleezza Rice**
Washington, DC
August 1, 2008

Yesterday, Congress passed important legislation that will further efforts to obtain fair compensation for American citizens in their claims against the Libyan government. I applaud the Congress' action. We hope administration efforts, working with the Congress, will help our fellow citizens close a painful chapter in their lives. The United States also looks forward to expanding its relationship with Libya and its people as we resolve contentious issues from the past.

**2008/614**

Released on August 1, 2008



Published by the U.S. Department of State Website at http://www.state.gov maintained by the Bureau of Public Affairs.

# Exhibit D

Home   About Frank   Newsroom   Issues   Constituent Services   Gallery   Links   Contact

## Contacts

**Newark Office**
One Gateway Center
Twenty-Third Floor
Newark, NJ 07102
Phone: (973) 639-8700
Toll Free: 1-888-398-1642
Fax: (973) 639-8723

**Camden Office**
One Port Center
Suite 505, Fifth Floor
2 Riverside Drive
Camden, NJ 08101
Phone: (856) 338-8922
Fax: (856) 338-8936

**Washington, DC**
Hart Senate Office Building
Suite 324
Washington, DC 20510
Phone: (202) 224-3224
TTY: (202) 224-2087
Fax: (202) 228-4054

Email Senator Lautenberg »

## Search

[       ]  Go



# Newsroom: Press Releases

Press Release of Senator Lautenberg

**Lautenberg Statement After Congress Approves Legislation to Allow Compensation for U.S. Victims of Libyan Terror**

After Swift Passage Today in Senate, Bill Passes House and Heads to President for Signature

**Contact:** Lautenberg Press Office 202.224.3224
Thursday, July 31, 2008

WASHINGTON, D.C. – Today, U.S. Sen. Frank R. Lautenberg (D-NJ) issued the following statement after both the Senate and the House of Representatives passed legislation he sponsored creating a fund for Libya to compensate U.S. victims of Libyan-sponsored terrorism:

**"For too many years, Libya has refused to accept responsibility for its horrific acts of terrorism against American victims.  But after the pressure we applied, Libya can finally be held accountable for these devastating events.  Now these victims and their families can get the long overdue justice they deserve."**

This new legislation, *The Libyan Claims Resolution Act*, would implement a final settlement agreement and resolve all outstanding U.S. terrorism claims against the Libyan government, including the amount owed by Libya for the 1988 Pan Am 103 bombing over Lockerbie, Scotland, which killed 270, including 38 from New Jersey, the 1986 Labelle discotheque bombing in Berlin, Germany which killed two and injured approximately 90 Americans and other U.S. deaths and injuries in pending cases.  The legislation is also sponsored by Sens. Joe Biden (D-DE), Richard Lugar (R-IN), John Warner (R-VA), Patrick Leahy (D-VT) and Carl Levin (D-MI).

**"Senator Frank Lautenberg is a hero for his two-decade long fight for justice for American victims of terrorism,"** said Kara Weipz, spokesperson for the Families of the Victims of Pan Am 103.  **"Senator Lautenberg's leadership, along with Senator Joe Biden, Senator Richard Lugar, Senator Carl Levin, Senator John Warner, Senator Pat Leahy and Senator John Warner has brought this legislation and potential deal to fruition.  The Pan Am 103 families strongly applaud the Senate's overwhelming bipartisan support for the legislation and a U.S.-Libya deal certified by the Secretary of State.  We strongly urge the resolution's swift passage by the House of Representatives so justice can be fulfilled."**

Specifically, the Libyan Claims Resolution Act would:

•  Provide for Libya to set up a fund to compensate U.S. victims of Libyan terror;

•  Require the Secretary of State to make a certification to Congress that the fund contains adequate funds to pay the settlements in full and to pay fair compensation to others who died or were injured as the result of Libyan terror; and

•  Provide for the dismissal of cases against Libya arising from terrorist acts that occurred before Libya was taken off the state sponsors of terrorism list in 2006 only once Libya has paid adequate money into the fund to compensate all victims.

In 2006, the Bush Administration removed Libya from the State Department's list of state sponsors of terrorism without final resolution to these outstanding cases involving U.S. victims.

Lautenberg is one of the Senate's leaders in seeking justice for victims of state-sponsored terrorism.  For years, Lautenberg has pressured the Bush administration to

resolve these cases and aid victims and families before the U.S. could normalize its relationship with Libya.

In 2008, the Senator's legislation for victims of terrorism was signed into law as part of the Fiscal Year 2008 National Defense Authorization Act. This law reaffirmed the rights of plaintiffs to sue state sponsors of terrorism; allowed the seizure of hidden commercial assets belonging to terrorist states; and limited the number of appeals that a terrorist state can pursue in U.S. courts among other things. Lautenberg also blocked construction of a U.S. embassy in Tripoli, Libya's capital, all U.S. government assistance to Libya and the appointment of a U.S. ambassador to Libya until the administration resolved these outstanding cases.

In 2000, President Clinton signed Lautenberg's Justice for Victims of Terrorism Act into law. This bill enabled the President to seize the assets of terrorist states and helped families collect damages won in court.

In 1996, Congress passed and President Clinton signed the Anti-Terrorism and Effective Death Penalty Act into law, which included Lautenberg's "Flatow Amendment." That measure gave American victims of state-sponsored terrorism the right to sue the responsible state.

**About Victims of Pan Am Flight 103**. Victims of Pan Am Flight 103 is the official umbrella organization of the family members and friends of those whose lives ended when a Libyan terrorist bomb exploded on Pan Am Flight 103 over Lockerbie, Scotland on December 21, 1988. They represent families from across the United States, including: New Jersey, New York, Michigan, Pennsylvania, Texas, Massachusetts, Connecticut, California, Maryland, South Carolina, North Carolina, Illinois, Vermont, Arkansas, North Dakota, Tennessee, Florida, Alabama, Virginia and Mississippi. For more information, visit them on the web at: www.victimsofpanamflight103.org.

# # #

**« Return to Press Releases**

Questions or Comments? Please let us know | Privacy Policy

# Exhibit E

Westlaw.    NewsRoom

7/31/08 CONGDOCS (No Page)                                                                    Page 1

```
7/31/08 Cong. Documents (Pg. Unavail. Online)
2008 WLNR 14283660
```

Congressional Documents
Copyright 2007 Federal Information & News Dispatch, Inc.

**July 31, 2008**

Section: U.S. Senate Documents

BIDEN Bill to Compensate Victims of Libyan Terrorism Passes Senate

July 31, 2008

Contact: Elizabeth Alexander 202-224-5042

BIDEN Bill to Compensate Victims of Libyan Terrorism Passes Senate

Washington, DC - Legislation sponsored by Chairman of the Senate Foreign Relations Committee Joseph R. Biden, Jr. (D-DE) to fairly compensate and resolve pending claims by U.S. victims of Libyan terrorism passed the Senate today. The bill - the Libyan Claims Resolution Act (S. 3370) - passed by unanimous consent and is co-sponsored by the Committee's Ranking Member Richard Lugar (R-IN) and Senators Frank Lautenberg (D-NJ), John Warner (R-VA), Patrick Leahy (D-VT), Carl Levin (D-MI) and George Voinovich (R-OH).

"This legislation will help bring justice and closure to the victims of Libyan terrorism," said Senator Joe Biden. "The families of the victims of the Pan Am 103 attack, the victims of the LaBelle disco attack and the victims of many other heinous acts of terrorism by Libya - who have waited for decades - will now be finally and fairly compensated."

There are numerous pending claims in terrorism-related cases against Libya that need resolution. Leading members of Congress have made clear that the U.S.-Libyan relationship should not proceed to a closer level of cooperation unless these cases are resolved and payments are made to U.S. victims of Libyan acts of terrorism. The cases include Pan Am 103, the bombing of the LaBelle disco in Berlin, attacks on Egypt Air and UTA (a French airline) and the attack at the Rome Airport in 1985. The Department of State has negotiated an agreement with Libya on a means to resolve these cases that will allow fair compensation in cases of wrongful death and personal injury. The compensation will be substantial, and will not involve any U.S. taxpayer funds. This legislation is a necessary part of that agreement.

The two cases in which there is a negotiated **settlement** (Pan Am 103 and LaBelle) would be paid at the full amount of the **settlement** agreement. In all other cases,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the death and physical injury cases involving U.S. nationals would receive compensation at levels comparable to those made available to Pan Am 103 and LaBelle victims and victims' families. Resolving these claims now will assure prompt payment to these victims, rather than years of litigation, and an uncertain prospect of collecting on judgments. Libya will not make payment until it is assured that claims are resolved and it will not face further action in U.S. courts, which this legislation provides. But the United States still holds the final key - the normal legal immunities in U.S. courts will not be restored to Libya until adequate funds are provided. If Libya does not fulfill its part of the bargain, nothing changes and the cases can proceed in U.S. courts.

Elizabeth Alexander

Communications Director, Office of U.S. Senator Joe Biden

elizabethalexander@biden.senate.gov

Direct: 202-224-5373

---- INDEX REFERENCES ----

NEWS SUBJECT:  (Legal (1LE33); International Terrorism (1IN37); Economics & Trade (1EC26); Government (1GO80))

REGION:  (North Africa (1NO44); Africa (1AF90); Mediterranean (1ME20); Arab States (1AR46); Libya (1LI91))

Language:   EN

OTHER INDEXING:  (BIDEN; COMMITTEE; CONGRESS; DEPARTMENT OF STATE; ELIZABETH ALEXANDER; PAN AM; SENATE; SENATE FOREIGN RELATIONS COMMITTEE JOSEPH R)  (Carl Levin; Communications Director; Direct; George Voinovich; Joe Biden; John Warner; Passes Senate; Patrick Leahy; Richard Lugar)

Word Count: 572
7/31/08 CONGDOCS (No Page)
END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.